UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AERYON LABS, INC., a Canadian Corporation,<br><br>Plaintiff,<br><br>v.<br><br>DATRON WORLD COMMUNICATIONS, INC., a California Corporation,<br><br>Defendant. | Case No.: 3:19-cv-02168-WQH-LL<br><br>**ORDER** |

HAYES, Judge:

The matters pending before the Court are the Petition to Confirm the Arbitration Award filed by Plaintiff Aeryon Labs, Inc. (Ex. A to ECF No. 1) and the Petition to Vacate the Arbitration Award filed by Defendant Datron World Communications, Inc. (ECF No. 2).

**PROCEDURAL BACKGROUND**

On October 30, 2019, Plaintiff Aeryon Labs, Inc. ("Aeryon") initiated this action by filing a Petition to Confirm an Arbitration Award in the Superior Court of California for the County of San Diego, assigned case number 37-2019-00058740-CU-PA-NC, against Defendant Datron World Communications, Inc. ("Datron"). (Ex. A Part 1, ECF No. 1-2 at 2). On November 13, 2019, Defendant removed the action to this Court pursuant to 28

U.S.C. § 1331, 28 U.S.C. § 1441(a), and 28 U.S.C. § 1446. (ECF No. 1 at 1). On November 18, 2019, Defendant filed a Response in opposition to the Petition to Confirm the Arbitration Award and a Petition to Vacate the Arbitration Award. (ECF No. 2). On December 13, 2019, Plaintiff filed a Reply in support to the Petition to Confirm the Arbitration Award. (ECF No. 5). On January 31, 2020, the Court heard oral argument. (ECF No. 8).

## THE ARBITRATION

Plaintiff is a Canadian company that "design[s], manufacture[s] and sell[s] UAVs, more familiarly known as drones." (ECF No. 1-3 at 35). In 2009, Plaintiff launched its first commercial product (the Scout). *Id*. In 2013, Plaintiff "launched a new and updated model called the Sky Ranger." *Id*. at 36.

Defendant is a California corporation. Defendant "is the price performance leader for tactical military radio communications equipment for foreign militaries around the world." *Id*. Defendant's "core business and main market is the military, but it has also worked with governments, police and other domestic security type agencies." *Id*. Defendant has "a network of resellers in over 80 countries." *Id*.

On July 19, 2010, Defendant and Plaintiff entered into a Private Label Distribution Agreement ("PLDA"). *Id*. at 48. "The contract did not go smoothly and there were issues concerning channel conflicts between [Defendant]'s and [Plaintiff]'s representatives." *Id*. at 51. On May 11, 2012, the 2010 PLDA was terminated. *Id*. "Several changes were made to the 2010 PLDA following its termination." *Id*. at 52. In January 2013, the 2012 PLDA was signed and backdated to July 20, 2012. *Id*. at 53. "Problems continued under the 2012 PLDA." *Id*. "Channel conflict issues continued to arise." *Id*. at 56. The 2012 PLDA "continued until it was finally terminated" on May 10, 2016. *Id*. at 58.

In Defendant's Statement of the Case, Defendant brought claims for breach of contract pursuant to the 2010 and 2012 PLDAs, breach of the covenant of good faith and fair dealing, promissory estoppel, intentional interference with prospective economic relations, negligent misrepresentation, intentional misrepresentation, and fraud. (ECF No.

2

3:19-cv-02168-WQH-LL

1-3 at 62-64). Defendant sought declaratory relief, injunctive relief, and damages "not less than US $20,000.000." *Id*. at 62.

The 2012 PLDA stated, in relevant part, that

> Any dispute, controversy or claim arising out of, relating to, or in connection with this Agreement, or the breach termination or validity thereof, which is not settled by mutual agreement of the Parties involved in such dispute, controversy or claim within 30 days of written notice by one Party to the other of the nature of such dispute, shall be finally settled by Arbitration. …

(ECF No. 1-2 at 25). The case was submitted to arbitration.

The arbitrator issued a Partial Award which concluded that "[t]he termination of the Private Label Distribution Agreement dated 2012 as amended by the [Plaintiff]'s notice of termination dated 10 May 2016 was valid and lawful." (ECF No. 1-3 at 251). The arbitrator rejected all of Defendant's claims. *Id*. Plaintiff "claim[ed] the sum of US $2,554,089 as the total of its legal fees and other costs." *Id*. at 260. Defendant

> for its part claimed, excluding the arbitration costs, the sum of US $520,902.50 in legal fees and US $154,350.36 for travel and related costs; other costs and expenses, including transcripts; and Datron time spent in the arbitration, giving a total of US $675,252.86.

*Id*. at 261. The arbitrator concluded that "[t]he award of legal and other costs in an arbitration is ultimately a matter for the discretion of the tribunal" and "is governed by Article 38 of the ICC Rules." *Id*. at 266. The arbitrator awarded Plaintiff US $ 1,997,445.75 for attorneys' fees, paralegal costs, technician costs, and other costs. *Id*. at 269. The arbitrator ordered that Defendant make the payment to Plaintiff by October 25, 2019. *Id*.

**CONTENTIONS OF THE PARTIES**

Defendant contends that the arbitration award should be vacated. Defendant asserts that the arbitrator refused to order discovery of Defendant's requested documents. Defendant contends that it was prejudiced as a result of the arbitrator's refusal when it was unable to sufficiently support its claims at the hearing. Defendant contends that the

arbitrator failed to follow the parties' choice of law in their arbitration agreement and failed to apply California law to the analysis of attorneys' fees and costs. Defendant contends that the arbitrator failed to properly evaluate whether the rates, time spent, or costs were reasonable before awarding Plaintiff $2,127,445.75 in attorneys' fees and costs.

Plaintiff contends that the arbitration award should be confirmed. Plaintiff contends that Defendant was permitted to present all its evidence and was not denied a fair hearing. Plaintiff contends that Defendant sought more discovery than it was entitled to receive under the IBA rules. Plaintiff contends that Defendant was permitted to argue in support of its requests for production and to present evidence at trial which was not part of either party's disclosures. Plaintiff contends that Defendant fails to identify any evidence that Defendant was prohibited from presenting. Plaintiff contends that this Court is not permitted to review the merits of the arbitrator's discovery determinations. Plaintiff contends that the arbitrator did not exceed authority by applying agreed-upon standards of the 2012 PLDA and ICC Arbitration Rules to grant the attorney's fee award. Plaintiff contends that the 2012 PLDA incorporated by reference the ICC Arbitration Rules, which grant the arbitrator broad and discretionary authority to award attorneys' fees.

## STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") governs the role of federal courts in reviewing arbitration decisions. Section 9 of the FAA provides that a federal district court "must" confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Judicial review of an arbitration award is thus "both limited and highly deferential" and the arbitration award "may be vacated only if it is 'completely irrational' or 'constitutes manifest disregard of the law.'" *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (quoting *Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004)). "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review" of an arbitration award under the FAA. *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019) (quoting *Bosack v.*

*Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009)). The "burden of establishing grounds for vacating an arbitration award is on the party seeking it." *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.,* 591 F.3d 1167, 1173 (9th Cir. 2010) (citing *Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 933 F.2d 1481, 1489 (9th Cir. 1991)).

## DISCUSSION

### I. Refusal to Order Disclosure - 9 U.S.C. § 10(a)(3)

Defendant asserts that the arbitrator refused to require Plaintiff to disclose certain documents pursuant to Defendant's requests. Defendant asserts that its requests for documents were refused entirely or granted with limitations. Defendant contends that it was not undertaking a fishing expedition as the arbitrator claimed. Defendant contends that the requests were specific and the documents sought were relevant and material. Defendant contends that the arbitrator refused to hear pertinent and material evidence because the pertinent and material evidence was not required to be disclosed.

Plaintiff contends that the arbitration award should be confirmed because Defendant was permitted to present all of its evidence and was not denied a fair hearing. Plaintiff contends that Defendant sought more discovery than it was entitled to receive. Plaintiff contends that Defendant was given a number of opportunities to argue in support for its requests for production. Plaintiff asserts that the arbitrator encouraged Defendant to modify its requests for production and that Defendant made three attempts to modify its requests for production with the arbitrator's assistance. Plaintiff contends that Defendant focuses on the merits of the arbitrator determinations, which is not reviewable by this Court.

Section 10 of the FAA permits a court to vacate an award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). "Arbitrators enjoy 'wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit,'" so long as they give "each of the parties to the dispute an 'adequate opportunity to present its evidence and arguments.'" *U.S. Life Ins.,*

5

591 F.3d at 1175 (citations omitted). To meet the standard for vacating the award, the arbitrator's refusal to hear evidence must demonstrate "bad faith or [be] so gross as to amount to affirmative misconduct." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 40 (1987).

On December 16, 2017, the arbitrator issued the First Procedural Order. (Ex. 5 to Def.'s Resp. to Petition to Confirm Arbitration Award, ECF No. 2-5). The arbitrator stated that "Parties are reminded that this is an international arbitration conducted under the Rules of the ICC and requests for broad categories of '*all documents*' which are not narrowly focused to particular issues and timelines are unlikely to be allowed. …" *Id*., ECF No. 2-5 at 2.

On November 14, 2018, the arbitrator issued a schedule of document requests in which the arbitrator issued rulings on Defendant's document requests to Plaintiff. (Ex. 10 to Def.'s Resp. to Petition to Confirm Arbitration Award, ECF No. 2-10). The arbitrator allowed requests 8-9, 11, 22-24, 27-29, 31, 33, 37-38, 41-44, 48, 53, 55 60-63, 74-75, 84, 106, 115-16, 118-21, 123-29, 132-33, 151, and 164. The arbitrator refused requests 4-7, 10, 12-21, 25-26, 30, 32, 34-36, 39-40, 45-47, 49-52, 54, 56-59, 64-73, 76-83, 85-105, 107-14, 117, 122, 130-31, 136, 139, 141-50, 152-63, and 165-90. The arbitrator concluded that requests 134-35, 137-38, and 140 were duplicative requests.

On November 21, 2018, the arbitrator issued the Order Regarding Disclosure Relating to Both the Application Made by Datron World Communications Inc. and Datron Holdings Inc. and that made by Aeryon Labs Inc. (Ex. 8 to Def.'s Resp. to Petition to Confirm Arbitration Award, ECF No. 2-8). The arbitrator stated that

> 2. For the purpose of grounds for refusing disclosure, I have amalgamated what I might describe as a "fishing expedition" with non-compliance with the Article 3 of the IBA Rules on the Taking of Evidence in International Arbitration ("IBA Rules") and the need for a request to be a "*narrow and specific category*" under the term "too broad." By "fishing expedition" I mean the situation where a party seeks a broad range of documents often over a lengthy period without specificity which is not supported by a precise

allegation in its pleading and with which documents it seeks to bolster its case, yet where the onus of proof remains on the party making the allegation.

3. Where I have refused a request it is because it is too broad and in many cases additionally too burdensome and/or not relevant or material to the outcome of the case. Other annotations as reasons for refusing disclosure are self-explanatory and ultimately mean that the documents requested are not of sufficient relevance to the case nor material to the outcome or are otherwise refused on grounds of procedural economy e.g. where the documents relate to the damages phase of the arbitration (assuming of course that this happens, a matter on which I cannot at this stage opine). …

8. I have ordered Datron to particularise certain parts of its pleading in a few requests and to do so within 48 hours of this order as I have found many of Datron's requests far too wide and often duplicative. …

*Id*., ECF No. 2-8 at 2.

After issuing the Order Regarding Disclosure, the arbitrator issued a provisional Further Clarification Order Regarding Disclosure. (Ex. 15 to Def.'s Resp. to Petition to Confirm Arbitration Award, ECF No. 2-15). The arbitrator stated that "before making this revised order final, I will give [Plaintiff] an opportunity to comment and [Defendant] an opportunity to add any specific pleaded allegation that I have missed but only where I have permitted this below …" *Id*., ECF No. 2-15 at 2 (emphasis omitted). The arbitrator goes on to explain the holdings regarding Requests 99, 150, 151, 167, 168, 181, 190. *Id*., ECF No. 2-15 at 2-3. The arbitrator stated that

> … I appreciate why [Defendant] wants all this information, but in international arbitration, disclosure is limited, as previously explained, and one party cannot seek to bolster an unparticularised case by asking for innumerable documents from the other side. Fishing expeditions are not allowed.

*Id*., ECF No. 2-15 at 3.

On December 2, 2018, the arbitrator issued a Final Order Regarding Clarification Regarding Disclosure. (Ex. 16 to Def.'s Resp. to Petition to Confirm Arbitration Award,

7

ECF No. 2-16). The arbitrator issued final rulings for Requests 167, 168, and 181 as well as for further disclosure. *Id.*, ECF No. 2-16 at 2-3.

On January 8, 2019, the arbitrator issued an Order Relating to Disclosure Issues. (Ex. 19 to Def.'s Resp. to Petition to Confirm Arbitration Award, ECF No. 2-19). The arbitrator stated that

> Essentially Datron's argument is that because there are a very large number of documents to be disclosed in the Canadian proceedings, the fact that far fewer have been disclosed in this arbitration indicates non-compliance with my orders. Datron has pointed to no specific failure to disclose other than this numerical disparity and the hope that when it trawls through the documents disclosed in the Canadian proceedings it might find a document which should have been disclosed in these proceedings. This is a far too speculative basis on which to make any allegation on non-compliance with my orders. …

*Id.*, ECF No. 2-19 at 3. The arbitrator required a "qualified senior representative of Aeryon [to] confirm on behalf of Aeryon compliance with the orders for disclosure I have made and the absence of further documents responsive to such requests which confirmations will be relied upon by the Tribunal." *Id.*, ECF No. 2-19 at 4. On January 15, 2019, Plaintiff's Chief Financial Officer confirmed that Plaintiff "has complied with th[e] Tribunal's orders for disclosure and there are no further documents responsive to [Defendant]'s disclosure requests." (Ex. 20 to Def.'s Resp. to Petition to Confirm Arbitration Award, ECF No. 2-20).

In this case, the parties engaged in discovery. The arbitrator considered Defendant's requests for discovery and issued a series of procedural orders specifically addressing discovery and ordering disclosure of documents. The arbitrator properly applied the ICC Rules as agreed upon by the parties. Defendant has failed to demonstrate that the arbitrator's refusal to order disclosure of certain requested documents demonstrated deprived Defendant of an "adequate opportunity to present its evidence and arguments." *U.S. Life Ins.*, 591 F.3d at 1175 (citations omitted). The Court concludes that the arbitrator's refusal to order disclosure of certain requested documents was not done in "bad faith" and

was not "so gross as to amount to affirmative misconduct." *United Paperworkers,* 484 U.S. 29 at 40.

## II. Application of ICC Rules - 9 U.S.C. § 10(a)(4)

Defendant contends that the arbitration award should be vacated because the arbitrator disregarded the parties' choice of law governing the award of attorneys' fees and costs. Defendant asserts that the arbitrator disregarded the 2012 PLDA choice of law provision identifying California law and applied ICC Rules instead. Defendant contends that the arbitrator's errors regarding fees and costs were not harmless. Plaintiff contends that the arbitration award should be confirmed because the arbitrator did not exceed authority by applying ICC Rules to the award of attorneys' fees and costs. Plaintiff contends that the arbitrator properly applied the ICC Rules to issue the fee award.

Vacatur is also warranted "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Court of Appeals has held that "arbitrators 'exceed their powers' … not when they merely interpret or apply the governing law incorrectly, but when the award is 'completely irrational,' … or exhibits a 'manifest disregard of law.'" *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (citations omitted). An award is "completely irrational" "only 'where [the arbitration decision] fails to draw its essence from the agreement.'" *Comedy Club*, 553 F.3d at 1288 (quoting *Hoffman v. Cargill Inc.,* 236 F.3d 458, 461-62 (8th Cir.2001)). "An [arbitration] award 'draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions.'" *Bosack*, 586 F.3d at 1106 (quoting *McGrann v. First Albany Corp.,* 424 F.3d 743, 749 (8th Cir. 2005)). Under this standard of review, the district court does not "decide the rightness or wrongness of the arbitrators' contract interpretation." *Id.* (quoting *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1024 (9th Cir. 1991)). "These grounds afford an extremely limited review authority, a

9

3:19-cv-02168-WQH-LL

limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *Kyocera Corp.,* 341 F.3d at 998.

The 2012 PLDA stated, in relevant part,

> 19.1 This Agreement, its interpretation, validity, enforcement and any and all disputes arising out of or related to this Agreement, shall be governed and construed in accordance with the laws of the State of California, except for its conflict of laws provisions. … Any dispute, controversy or claim arising out of, relating to, or in connection with this Agreement, or the breach termination or validity thereof, which is not settled by mutual agreement of the Parties involved in such dispute, controversy or claim within 30 days of written notice by one Party to the other of the nature of such dispute, shall be finally settled by Arbitration. The Arbitration shall be conducted in accordance with the Rules of Conciliation and Arbitration of the ICC in effect at the time of the arbitration. …
>
> 19.3 The arbitral award shall be in writing and shall be final and binding on the Parties. The award may include an award of costs, including reasonable attorney's fees and disbursements. …

(ECF No. 1-2 at 24-25).

In *Polimaster*, the Court of Appeals reviewed an arbitration agreement which stated that "[i]n case of failure to settle the mentioned disputes by means of negotiations they should be settled by means of arbitration at the defendant's site." *Polimaster Ltd. v. RAE Systems, Inc.*, 623 F.3d 832, 834 (9th Cir. 2010). The Court of Appeals found that "[t]he arbitration agreement was not ambiguous." *Id*. at 837. The Court of Appeals found that "[t]he requirement of arbitration at the defendant's site is effectively a forum selection clause, in which the parties agreed to arbitrate at the location of a defendant's principal place of business" and "is presumptively enforceable." *Id*. (citation omitted). The Court of Appeals concluded that the parties' express agreement to submit disputes to arbitration at defendant's site "effectively removed the decision regarding forum from the procedural decisions delegated to the arbitrator" and the arbitrator "could not override the parties' express agreement in favor of general procedural rules." *Id*. at 841.

In this case, the 2012 PLDA states that "[t]he [a]rbitration shall be conducted in accordance with the Rules of Conciliation and Arbitration of the ICC in effect at the time of the arbitration." (ECF No. 1-2 at 25). Plaintiff and Defendant agreed upon the ICC Rules to govern arbitration.

Pursuant to California law, "parties may validly incorporate by reference into their contract the terms of another document." *Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748 (1994) (citing *Baker v. Aubry*, 216 Cal.App.3d 1259, 1264 (1989)). In order for the terms of another document to be incorporated into the parties' contract, "the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Shaw v. Regents of University of California*, 58 Cal. App. 4th 44, 54 (1997) (quoting *Williams Constr. Co. v. Standard-Pacific Corp.*, 254 Cal. App. 2d 442, 454 (1967)).

The arbitration agreement "[is] not ambiguous." *See Polimaster,* 623 F.3d at 837. The language of the arbitration agreement is "clear and unequivocal." *Shaw*, 58 Cal. App. 4th at 54 (quoting *Williams Constr.*, 254 Cal. App. 2d at 454). The 2012 PLDA, "its interpretation, validity, enforcement and any and all disputes arising out of or related to this Agreement" are governed by California law. (ECF No. 1-2 at 24). "Any dispute, controversy or claim arising out of, relating to, or in connection with this Agreement, or the breach termination or validity thereof, which is not settled by mutual agreement of the Parties … within 30 days … shall be finally settled by Arbitration." *Id*. at 25. "The Arbitration shall be conducted in accordance with the Rules of Conciliation and Arbitration of the ICC …." *Id*. Any arbitral award shall be "in writing," "final," and binding. *Id*. Any arbitral award "may include an award of costs, including reasonable attorney's fees …." *Id*. Pursuant to the agreement, the award of attorneys' fees in the arbitration award is governed by ICC Rules. Plaintiff's President and Defendant's President/CEO initialed the pages of the 2012 PLDA pertaining to choice of law and arbitration. The Court concludes that the

arbitrator did not exceed authority by applying ICC Rules to the award of costs, including attorneys' fees, in the arbitration.

## CONCLUSION

IT IS HEREBY ORDERED that the Petition to Confirm the Arbitration Award filed by Plaintiff Aeryon Labs, Inc. (Ex. A to ECF No. 1) is GRANTED

IT IS FURTHER ORDERED that the Petition to Vacate the Arbitration Award filed by Defendant Datron World Communications, Inc. (ECF No. 2) is DENIED.

The Clerk of the Court shall enter judgment in favor of Plaintiff Aeryon Labs, Inc. and against Defendant Datron World Communications, Inc.

Dated: March 3, 2020

*/s/ William Q. Hayes*
Hon. William Q. Hayes
United States District Court